**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| MANUEL NDONGALA,<br><br>Petitioner,<br><br>v.<br><br>DAVID T. WESLING, *et al.*,<br><br>Respondents. | No. 1:26-cv-10194-ADB |

**RESPONSE TO ECF NO. 9 IN OPPOSITION TO AWARDING ATTORNEY'S FEES AND EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT**

Respondents, through their attorney, Leah B. Foley, United States Attorney, respectfully oppose awarding Petitioner Manuel Ndongala attorney's fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"). *See* ECF No. 9; *see also* ECF No. 1 at 12.

**I.      INTRODUCTION**

Pursuant to the EAJA, 28 U.S.C. § 2412, Petitioner requested an award of attorney's fees and expenses incurred bringing a habeas challenge to his mandatory immigration detention under 8 U.S.C. § 1225(b), which permits detention without a bond hearing to those who are considered "applicants for admission" into the United States. This Court granted Petitioner's habeas petition and Petitioner received a bond hearing. *See* ECF No. 9. Nonetheless, Petitioner is not entitled to fees because habeas petitions are not "civil actions"—a threshold requirement for recovery under the EAJA. Likewise, even if habeas petitions were "civil actions," Respondents were substantially justified in litigating the habeas petition, as evidenced by the numerous courts which have affirmed its position in other cases.

II.    **STATEMENT OF FACTS**

Petitioner is a native and citizen of Angola who entered the United States without inspection on or about April 7, 2023. ECF No. 1 at 15. On April 14, 2023, ICE released Petitioner on an Order of Recognizance on or about April 14, 2023. *Id*. at 17.  ICE recently detained Petitioner as a mandatory detainee under 8 U.S.C. § 1225(b)(2), and Petitioner filed a Petition for a Writ of Habeas Corpus before this Court on January 17, 2026. *See* ECF No. 1; ECF No. 8. Respondents opposed the Petition on January 26, 2026, maintaining that Petitioner is a mandatory detainee pursuant to 8 U.S.C. § 1225(b), but that the legal issues presented in this Petition are similar to those recently addressed by this Court in *Morales v. Plymouth County Correctional Facility*, No. 25-cv-12602-ADB (D. Mass. Sept. 30, 2025). ECF No 8. On January 27, 2026, the Court granted the Petition, ordered that Petitioner receive a bond hearing under 8 U.S.C. § 1226(a), and for Respondents to show cause as to why Petitioner is not entitled to an award of EAJA fees. ECF No. 9.

III.    **ARGUMENT**

Petitioner is not entitled to attorney's fees or expenses under the EAJA. A movant may recover fees under the EAJA only when (1) the underlying action is a "civil action," (2) the government's position in the underlying action was not substantially justified, and (3) there are no special circumstances making an award unjust.  28 U.S.C. § 2412(d)(1)(A); *Kiareldeen v. Ashcroft*, 273 F.3d 542, 545 (3d Cir. 2001); *Barco v. Witte*, 65 F.4th 782, 784 (5th Cir. 2023). Petitioner, at a minimum, fails to satisfy the first two elements, and has not alleged any facts to support the third element.  Accordingly, the Court should not award EAJA fees or expenses.

A.    **Habeas Proceedings Are Not "Civil Actions" for EAJA Purposes**

"The EAJA is a limited waiver of sovereign immunity, allowing for the imposition of

attorney's fees and costs against the United States in specific civil actions." *Barco*, 65 F.4th at 784 (citing *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991)).  Any "waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996).  As such, a court's "'task is to discern the unequivocally expressed intent of Congress, construing ambiguities in favor of immunity.'" *O'Brien v. Moore*, 395 F.3d 499, 503 (4th Cir. 2005) (quoting *U.S. v. Williams*, 514 U.S. 527, 531 (1995) (internal quotations omitted)).  Because Congress did not define the term "civil action" in the EAJA, *see* 28 U.S.C. § 2412(d)(2)(A)-(I), *Obando-Segura v. Garland*, 999 F.3d 190, 193 (4th Cir. 2021), any ambiguity regarding whether habeas proceedings fall within the term "civil action" must be construed in the government's favor.

This Circuit has not ruled on this issue, but Courts of Appeals in other circuits have held that habeas proceedings are not "civil actions" for EAJA purposes. *See, e.g.*, *Obando-Segura*, 999 F.3d at 197 (4th Cir. 2021); *Barco*, 65 F.4th at 785 (5th Cir. 2023). In *Barco*, an immigration habeas case, the court explained that "'a habeas corpus proceeding is neither a wholly criminal nor wholly civil action, but rather a hybrid action that is unique, a category unto itself.'" 65 F.4th at 785 (alterations omitted; quoting *O'Brien*, 395 F.3d at 505). In *Obando-Segura*, another immigration habeas case, the court similarly described habeas proceedings as "hybrid" and not fitting within the traditional criminal-civil paradigm. 999 F.3d at 193-94. In an unpublished opinion, the Third Circuit in a criminal habeas case agreed that habeas petitions are not "civil actions" "for purposes of EAJA." *Daley v. Fed. Bureau of Prisons*, 199 Fed. Appx. 119, 121 (3d Cir. Aug. 25, 2006) (citing *O'Brien*, 395 F.3d at 507-08; *Ewing*, 826 F.2d at 969-71; *Boudin v. Thomas*, 732 F.2d 1107, 1112-15 (2d Cir. 1984)).

In addition, "Supreme Court precedent supports finding that a habeas proceeding seeking

3

release from civil detention is not unambiguously a 'civil action.'" *Obando-Segura*, 999 F.3d at 195 (citing *Schlanger v. Seamans*, 401 U.S. 487 (1971)). In *Schlanger*, the Court held that the district court lacked jurisdiction over a military servicemember's habeas petition challenging his civil confinement because the custodian of the facility he was detained in was in another federal district. 401 U.S. at 490-91. While Congress had provided for nationwide service of process in a "civil action" against an officer of the United States in 28 U.S.C. § 1391(e) (1964), "the legislative history of that section [wa]s barren of any indication that Congress extended habeas corpus jurisdiction." *Id.* at 490 n.4. The Court noted that while "habeas corpus is technically 'civil,' it is not automatically subject to all the rules governing ordinary civil actions." *Id.*

The Second, Tenth, and recently the Third Circuits, on the other hand, distinguish between immigration and criminal habeas cases and consider immigration habeas cases to be "civil actions" for EAJA purposes. *See Vacchio v. Ashcroft*, 404 F.3d 663, 668 (2d Cir. 2005); *Daley v. Ceja*, 158 F.4th 1152 (10th Cir. 2025); *Michelin v. Warden Moshannon Valley Corr. Ctr.*, No. 24-2990, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026) (following *Daley* and waiving sovereign immunity to fee awards for habeas challenges to immigration detention). The *Vacchio* court based this distinction on what it deemed to be the legislative purpose of the EAJA—to eliminate financial barriers to challenging unreasonable government action. *Id.* at 669-71. The court reasoned that, while the goal of eliminating financial barriers is not served in criminal habeas proceedings because criminal defendants are sometimes provided court-appointed counsel, the goal is served in immigration habeas proceedings because "persons in immigration proceedings are not provided free legal representation in the absence of paid counsel." *Id.* at 670-71. The Fourth Circuit in *Obando-Segura* rejected the Second Circuit's approach, "declin[ing] to delve into the legislative-purpose morass," and instead focused on "why habeas proceedings are hybrid proceedings that are

4

meaningfully different from civil actions." 999 F.3d at 195. The court added that "habeas proceedings do not change their nature based on the rationale for the underlying detention: there is just a single 'type' of habeas proceeding." *Id.*

The numerous circuits that have concluded habeas proceedings are not "civil actions" for EAJA purposes and the split between the Fourth and Fifth and the Second, Third, and Tenth Circuits on whether immigration habeas cases are "civil actions" illustrate that Congress did not unequivocally express its intent for the term "civil actions" to include criminal or immigration habeas proceedings. Because of this ambiguity, the rule that waivers of sovereign immunity are to be strictly construed requires the Court to follow the Fourth and Fifth Circuits' approach and construe the ambiguity in Respondents' favor. Accordingly, Petitioner's habeas case was not a "civil action", and Petitioner is not eligible for attorney's fees under the EAJA. The Court need not address the substantial justification issue.

**B.     Assuming Habeas Proceedings Are "Civil Actions," Respondents Were Substantially Justified in Litigating the Habeas Petition**

Even if the Court determines immigration habeas cases are "civil actions" for EAJA purposes, Respondents were substantially justified in litigating Petitioner's habeas petition. To establish substantial justification, the government must show that its litigation position was "'justified to a degree that could satisfy a reasonable person.'" *Johnson v. Gonzalez*, 416 F.3d 205, 210 (3d Cir. 2005) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). It does not mean, for instance, "justified to a high degree." *Dantran, Inc. v. United States Department of Labor*, 246 F.3d 36, 42 (1st Cir. 2001) (quoting *Pierce*, 487 U.S. at 565). Rather, a court should ask "whether the government's position 'has a reasonable basis in law and fact,' or, stated another way, whether 'a reasonable person could think it correct.'" *Id*. at 40-41 (quoting *Pierce*, 487 U.S. at

566 n.2); *accord De Allende v. Baker*, 891 F.2d 7, 11-12 (1st Cir. 1989).  Accordingly, a party can lose the litigation but nonetheless be substantially justified.  *Dantran*, 246 F.3d at 41.  In fact, its course of action could even constitute an abuse of discretion and still meet the standard.  *Id*. at 43.

In the immigration context, the government must establish substantial justification twice— "once with regard to the underlying agency action and again with regard to its litigation position in the proceedings arising from that action." *Id.* Here, Respondents were substantially justified in both the underlying agency action—ICE detaining Petitioner without a bond hearing—and in their litigation position opposing Petitioner's habeas petition based on the Civil Division's obligation to defend the constitutionality of an Act of Congress.

Here, the government's position was not only substantially justified, but its position has been affirmed in numerous legal decisions and is supported by the statute. Notably, besides the Prayer for Relief within the Petition, Petitioner has not sufficiently alleged why he believes the government's position to detain, and subsequently defend his detention, was substantially unjustified. ECF No. 1 at 12. ICE maintains that it was substantially justified in detaining Petitioner without a bond hearing for the limited period preceding the filing of his Petition because Petitioner was never *lawfully* admitted into the United States; indeed, when he was initially encountered by immigration authorities, he was detained under 8 U.S.C. § 1225(b)(2). As Petitioner admits that on or about April 7, 2023, he entered the United States without inspection by an immigration officer. ECF NO. 1 at 15, Notice to Appear. ICE Petitioner a Notice to Appear charging him as inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) on April 13, 2023, and released him on an Order of Recognizance the next day. *See id*. at 15-17. However, at no time throughout Petitioner residing in the United States, which began in 2023, was he *lawfully* admitted into the United States as that term is defined by statute.  Consequently, ICE had the legal authority to detain Petitioner

6

under Section 1225(b).

On the other hand, 8 U.S.C. § 1226 generally governs the process of arresting and detaining noncitizens during their removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). For noncitizens detained under Section 1226(a), the Attorney General may provide a bond hearing. *Id.* But for noncitizens like Petitioner, who are an applicant for admission under 8 U.S.C. § 1225 (b), the statutory provisions of 8 U.S.C. § 1226 (a) are inapplicable. In sum, Congress restricted the Attorney General's discretion to provide bond hearings to noncitizens detained under Section 1225(b)(1) and (b)(2).

As argued previously in *Morales v. Plymouth County Correctional Facility*, No. 25-cv-12602-ADB (D. Mass. Sept. 30, 2025), applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)."[1] *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to arriving aliens and "certain other" noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.*; 8 U.S.C. § 1225(b)(1)(A)(i), (iii). These noncitizens are generally subject to expedited removal proceedings. *See* 8 U.S.C. § 1225(b)(1)(A)(i). But if the individual "indicates an intention to apply for asylum . . . or a fear of persecution," immigration officers will refer the alien for a credible fear interview. *Id.* § 1225(b)(1)(A)(ii). An individual "with a credible fear of persecution" is "detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii).

Section 1225(b)(2) is "broader" and "serves as a catchall provision." *Jennings*, 583 U.S. at

---

[1] In its abbreviated response, Respondents relied on the opposition previously submitted to this Court in *Morales*, ECF No. 14.

287.  It "applies to all applicants for admission not covered by § 1225(b)(1)." *Id.*  Under § 1225(b)(2), an individual "who is an applicant for admission" shall be detained for a removal proceeding "if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  8 U.S.C. § 1225(b)(2)(A); *see Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 ("The third category of applicants for admission . . . are those aliens who are seeking admission and who an immigration officer has determined are 'not clearly and beyond a doubt entitled to be admitted.' . . . [T]he INA requires that this third "catchall" category of applicants for admission be mandatorily detained for the duration of their immigration proceedings."); *Matter of Q. Li*, 29 I. & N. Dec. 66, 68 (BIA 2025) ("for aliens arriving in and seeking admission into the United States who are placed directly in full removal proceedings, section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), mandates detention 'until removal proceedings have concluded.'") (citing *Jennings*, 583 U.S. at 299); *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2009) (holding a noncitizen who is transferred from expedited removal proceedings to full removal proceedings after establishing a credible fear of persecution or torture is ineligible for release on bond).[2]

The Supreme Court has confirmed that this statutory mandate for detention extends for the entirety of removal proceedings. *Jennings*, 583 U.S. at 302 ("[Section] 1225(b)(2) . . . mandate[s] detention of aliens *throughout the completion of applicable proceedings* and not just

---

[2] Pursuant to regulation concerning the "scope of examination" for an applicant for admission, an "alien present in the United States who has not been admitted or paroled … is subject to the provisions of section 212(a) of the Act [8 U.S.C. § 1182] and to removal under section 235(b) [8 U.S.C. § 1225(b)] or 240 of the Act [8 U.S.C. § 1229a]."  8 C.F.R. § 235.1(f)(2).

until the moment those proceedings begin." (emphasis added)).  Once in removal proceedings, an IJ "shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1).  Such proceedings are the "sole and exclusive procedure for determining whether an alien may be admitted to the United States…".  *Id.*, § 1229a(a)(3).  The Department of Homeland Security ("DHS") has the sole discretionary authority to temporarily release on parole "any alien applying for admission to the United States" on a "case-by-case basis for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A); *see Biden v. Texas*, 597 U.S. 785, 806 (2022).

Respondents acknowledge at the time of his most recent arrest and detention in January 2026, Petitioner was physically present and residing in the United States.  However, based on the statutory definition of "admission", Respondents maintain that he had not been *lawfully* admitted into the United States.[3]  Although this Court followed decisions of other judges in this District in granting the Petition, some of which had differing fact patterns than those in this matter, there were other sessions in the District that decided the issue to the contrary at that time.[4]  *See Pena v. Hyde*, No. 25-11983-NMG, 2025 WL 2108913, *1 (D. Mass. July 28, 2025), where the Court (Gorton, J.) held that an alien remains an applicant for admission and thus subject to detention under Section

---

[3] The term "admission" is defined by the INA to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).

[4] In the event that Petitioner raises an argument that because of the *Guerrero Orellana* class certification and ordered declaratory judgment the government's position is not substantially justified, Respondents respectfully submit *Guerrero Orellana* is currently on appeal before the First Circuit. *See Guerrero Orellana v. Moniz* (1st Cir. 25-2152). Additionally, the Fifth Circuit in *Buenrostro-Mendez v. Bondi* (5th Cir. 25-20496), recently heard argument on the 8 U.S.C. § 1225(b)(2) issue, further demonstrating that the government is justified in litigating these issues.

1225(b)(2) "if he has arrived to or is present in the country but has not yet been lawfully granted admission." *Id,* at *1. This reasoning has also been followed by other courts throughout the Country. *See Romero v. Bondi*, No. 1:25-CV-993 (RDA/WEF), 2025 WL 2490659, at *2–3 (E.D. Va. July 2, 2025) ("Petitioner has never been 'admitted' to the United States, and thus cannot be detained under 8 U.S.C. § 1225(a)); *Maldonado v. Bostock,* No. 23-cv-00760, 2023 WL 5804021, at *3 (W.D. Wash. Aug. 8, 2023) (explaining that petitioner "appears to be an applicant for admission because he is a noncitizen 'present in the United States' and 'has not been admitted.'"); *Vargas Lopez v. Trump,* No. 8:25-cv-526, 2025 WL 2780351, at *9 (D. Neb. Sept. 30, 2025) (just because petitioner illegally remained in this country for years does not mean that he is suddenly not an "applicant for admission" under 8 U.S.C. §1225(b)(2)).

In fact, in a recent decision issued by the United States District Court for the Southern District of New York, the Court unequivocally held that a noncitizen who entered the United States unlawfully is subject to mandatory detention under 8 U.S.C. § 1225(b) as it is clear from the statute, and the historical background of the INA dealing with the issue of admissibility, that ICE may mandatorily detain such individuals. *See Chen v. Almodovar,* No. 25-cv-8350-MKV, 20256 WL 3484855, at ** 7-8 (S.D.N.Y. Dec. 4, 2025).

At bottom, it was reasonable for Respondents to detain Petitioner as, based on the statutory language at play in this case, and the underlying facts herein, he is an applicant for admission as defined by Section 1225 and remained such until the conclusion of his removal proceedings, where an IJ is charged with "determining whether an alien may be admitted to the United States". 8 U.S.C. § 1229a(a)(3). *Romero*, 2025 WL 2490659, at *3 (Explaining that petitioner "provides no evidence that his release on bond conferred any legal status itself" and that because petitioner "has never been admitted to the United States, [he] thus cannot be detained under 8 U.S.C. § 1226(a).").

As the BIA explained in *Matter of Yajure Hurtado*, "being arrested pursuant to a warrant and placed into removal proceedings does not constitute an admission." 29 I&N Dec. at 228. As an alien present in the United States who has not been admitted under the INA, Petitioner squarely fit within Section 1225's definition of "applicant for admission" and was subject to mandatory detention.

There is therefore a substantial body of case law, both in BIA precedent and in the federal district courts supporting the government's legal position. As can be gleaned from the legal precedent referenced above, the issue of whether a noncitizen detained under 1225(b) is somehow entitled to a bond hearing under 8 U.S.C. § 1226 because of merely entering the United States unlawfully, or in other circumstances, is hotly debated, with District Courts throughout this country issuing conflicting decisions. That being said, "[W]hile the EAJA redresses governmental abuse, it was never intended to chill the government's right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong." *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993). The government is surely justified in litigating an issue in which many courts have already affirmed its position, even if it is a minority position. In short, ICE is properly detaining noncitizens who have unlawfully entered the country and is appropriately following the statutory mandate passed by Congress in this context. Accordingly, ICE's decision to detain Petitioner without a bond hearing was substantially justified and Petitioner is thus not eligible for fees under the EAJA.

## IV.    CONCLUSION

For the foregoing reasons, the Court should not award Petitioner EAJA fees and costs.

Dated: February 6, 2026                    Respectfully submitted,


                                           LEAH B. FOLEY

                                           United States Attorney


                            By:    */s/ Erica McMahon*
                                   Special Assistant United States Attorney
                                   United States Attorney's Office
                                   1 Courthouse Way, Suite 9200
                                   Boston, MA 02210
                                   Tel.: 617-748-3271
                                   Email: Erica.McMahon@usdoj.gov



                     **CERTIFICATE OF SERVICE**

        I, Erica McMahon, Special Assistant United States Attorney, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent to those indicated as non-registered participants.




Dated: February 6, 2026                    By: */s/ Erica McMahon*
                                           Special Assistant United States Attorney