UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MANUEL NDONGALA, | ) | |
| Petitioner, | ) | |
| v. | ) | Case No. 26-cv-10194-ADB |
| DAVID T. WESLING, et al. | ) | |
| Respondents. | ) | |

**PETITIONER'S APPLICATION FOR FEES AND COSTS PURSUANT
TO THE EQUAL ACCESS TO JUSTICE ACT AND RESPONSE TO
RESPONDENTS' OPPOSITION (ECF NO. 10)**

Pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, and pursuant to the Court's order dated January 27, 2026 (ECF NO. 9), Petitioner Manuel Ndongala ("Petitioner") respectfully requests that the Court award him attorney's fees and litigation costs for prosecution of the above-captioned petition.

## I.    INTRODUCTION

Petitioner filed the above-captioned Petition for a Writ of Habeas Corpus after he was detained by Immigration and Customs Enforcement ("ICE") on or about November 18, 2026 in Maine. Petitioner entered the United States without inspection and was detained pursuant to ICE's discretionary detention authority pursuant to 8 U.S.C. §1226(a). Petitioner has no criminal history. Nonetheless, ICE placed Petitioner in custody without a bond hearing in violation of his rights to due process. Only because Petitioner filed the above petition for a writ of habeas corpus did Petitioner obtain a bond hearing at which he was ordered released by an Immigration Judge upon the payment of bond.

Petitioner prevailed on his petition against the government after it filed an abbreviated

response to the petition conceding that if the Court followed its reasoning in its prior decisions, namely *Morales v. Plymouth County Correctional Facility*, No. 25-cv-12602-ADB (D. Mass. Sept. 30, 2025), "it would reach the same result here. Accordingly, Respondents submit that the Court may resolve this Petition without further briefing or oral argument." ECF No. 8 (footnote omitted). The Court thereafter granted the Petition and ordered Respondents "to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within 10 days of this order." ECF No. 9. The Court further ordered Respondents to show cause within 10 days of the order "why Petitioner is not entitled to an award of reasonable fees and costs as a 'prevailing party' under the Equal Access to Justice Act, 28 U.S.C. § 2412."

Petitioner has prevailed in his Petition against Respondents (hereafter, the "government" or "Respondents") and he is entitled to an award of his fees and costs in the face of government conduct that plainly lacks substantial justification and where there are no special circumstances that would make the award unjust. He asks that the Court grant his application and enter an order assessing against Respondents $1658.25 in attorney's fees and costs.

II.    **ARGUMENT**

      A.    <u>**Mr. Ndongala Is Eligible For An Award Of Fees And Costs**</u>

          1.    **Mr. Ndongala is the prevailing party**

Mr. Ndongala successfully petitioned for a writ of habeas corpus and therefore he is the "prevailing party" within the meaning of EAJA. *See Oscar v. Gillen*, 595 F. Supp.2d 166, 169 (D. Mass. 2009); *Geegbae v. McDonald*, 2011 WL 841237 at *1 (D. Mass. Mar. 8, 2011); *see also Tang v. Chertoff*, 689 F. Supp.2d 206, 211 (D. Mass. 2010) ("[i]n immigration cases, the EAJA's purpose of alleviating the burden on individuals forced to incur the costs of litigation to challenge unreasonable government actions has particular resonance. The plaintiffs in such cases are often quite poor, and the stakes are high").

To qualify as a "prevailing party" for purposes of EAJA, there must be "(1) a material alteration of the legal relationship of the parties; and (2) a judicial imprimatur on the change." *See Oscar*, 595 F. supp. at 169. Under this standard, Mr. Ndongala is unquestionably a prevailing party. Mr. Ndongala filed his Petition after being taken into custody by Respondents and deprived of his freedom. After the Court granted the Petition, finding Mr. Ndongala was being held without a bond hearing in violation of his rights to due process, Mr. Ndongala was able to obtain a bond hearing on February 5, 2026 and he was ordered released from government custody. A true and correct copy of the Immigration Judge's order granting bond is attached hereto as Exhibit 1. As the prevailing party, a status that Respondents do not appear to contest, Mr. Ndongala is eligible for an EAJA award.[1]

### 2.    EAJA applies to the Petition and waives sovereign immunity

Respondents argue that immigration habeas petitions are not "civil actions" and thus EAJA's waiver of sovereign immunity does not apply to their actions here. ECF No. 10 at 2-5. They argue that there is a purported circuit split on the issue, one in which they assert the First Circuit has not yet decided. *Id. But see Mercado v. United States*, 183 F.2d 486, 487 (1st Cir. 1950 ("[H]abeas corpus [] has always been regarded as a civil proceeding[.]"). Two circuit courts of appeal, the Third and the Tenth, have recently thoroughly analyzed and rejected precisely the arguments that Respondents present here, *see Michelin v. Warden Moshannon Valley Correctional Center, __ F.4th __,* 2026 WL 263483 (3rd Cir. February 2, 2026); *Daley v. Ceja,* 158 F.4th 1152 (10th Cir. 2025), and a number of judges within this District have awarded EAJA fees for immigration habeas cases. *See infra.* This Court should do the same.

Congress waived government immunity for certain types of fees when it enacted EAJA.

---

[1] Mr. Ndongala's net worth did not exceed $2,000,000 at the time he filed his Petition. *See* Declaration of Manuel Ndongala at ¶ 3, filed contemporaneously herewith.

*Ardestani v. INS*, 502 U.S. 129, 137 (1991). The statute authorizes fees against the government "in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action," subject to exceptions that do not apply here. 28 U.S.C. § 2412(d)(1)(A). EAJA does not define the phrase "civil action." The Tenth Circuit recently closely examined the definition of "civil action" and concluded that the phrase "unambiguously refers to any legal action brought to enforce a private or civil right, or to redress a private wrong." *Daley v. Ceja*, 158 F.4th 1152, 1159 (10th Cir. 2025). The court stated that:

> The common law recognizes a right of "personal liberty," defined as the right to be free from "imprisonment or restraint, unless by due course of law." 1 Blackstone, *supra,* at *130. That right is a private one because it attaches to an individual's person rather than to the public at large. *Id.* at *118. And since a wrong is "nothing else but a privation of right," 3 Blackstone, *supra,* at *2, the violation of personal liberty through unlawful detention is a private wrong. *Id.* at *127. Any action that seeks to redress this private wrong is a civil action under our construction of the EAJA. Following this logic, **the writ of habeas corpus is a civil action: it is the common law mechanism used to challenge the legality of detention and therefore to redress unlawful detentions**. *Id.* at *133; *see also* 1 Blackstone, *supra,* at *131.

*Id.* (emphasis added). The court noted that the Supreme Court itself has explained that "'[t]he writ of *habeas corpus* is the remedy which the law gives for the enforcement of the civil right of personal liberty.'" *Id.* (quoting *Ex Parte Tom Tong*, 108 U.S. 556, 559 (1883). Numerous cases followed such that "by the time the EAJA was enacted in 1980, it is 'well settled' under Supreme Court precedent 'that habeas corpus is a civil proceeding.'" *Id.* at 1160 (quoting *Browder v. Dir., Dep't Corr. Of Ill.*, 434 U.S. 257, 269 (1978). *See also Mercado*, 183 F.2d at 487; *United States ex rel. Meadows v. New York*, 426 F.2d 1176, 1183 n. 9 (2d Cir. 1970) ("Since habeas corpus proceedings are civil in nature, they are subsumed under the phrase 'any civil action.'"); *United States ex rel. Thomas v. New Jersey*, 472 F.2d 735, 741 (3d Cir. 1973) ("Habeas corpus is a civil proceeding."); *Long v. Robinson*, 436 F.2d 1116, 1119 (4th Cir. 1971) (describing habeas corpus

4

as a "civil process"); *Estep v. United States,* 251 F.2d 579, 581 (5th Cir. 1958) ("Habeas corpus petitions ... are, of course, civil proceedings[.]"); *Bowdidge v. Lehman,* 252 F.2d 366, 368 (6th Cir. 1958) ("Habeas corpus is a civil proceeding[.]"); *United States ex rel. Rebenstorf v. Pate,* 417 F.2d 1222, 1225 (7th Cir. 1969) ("[T]he federal habeas corpus remedy[] is civil in nature."); *Burgess v. King,* 130 F.2d 761, 762 (8th Cir. 1942) ("Habeas corpus is in its nature a civil rather than a criminal proceeding[.]"); *Collins v. Heinze,* 217 F.2d 62, 62 (9th Cir. 1954) ("A habeas corpus proceeding is in the nature of a civil action[.]"); *Hunter v. Thomas,* 173 F.2d 810, 812 (10th Cir. 1949) ("Habeas corpus is a civil proceeding."); *Jackson v. United States,* 353 F.2d 862, 865 n.4 (D.C. Cir. 1965) ("Of course, habeas corpus is considered a civil proceeding[.]").

While habeas petitions that challenge criminal restraint may not be considered a civil action, a habeas proceeding challenging immigration detention is. *Daley*, 158 F.4th at 1162, citing *Demore v. Kim*, 538 U.S. 510, 523 (2003) (immigration detention is an "aspect of the deportation process") and *INS v. Lopez-Mendoza*, 4689 U.S. 1032, 1038 (1984) (a deportation proceeding is "a purely civil action."); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (immigration detention is civil). Accordingly, "[b]ecause both habeas and the underlying immigration proceedings are civil, habeas actions challenging immigration detention are purely civil"). 158 F.4th at 1162. "The EAJA authorizes the award of attorneys' fees to petitioners who prevail against the Government in such actions." *Id.*

The *Daley* court further found that "EAJA's stated statutory purpose supports" this conclusion in part, because one of the statute's stated purposes is "to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney fees, expert witness fees, and other costs against the United

States." 158 F.4th at 11623 (quoting Pub. L. 96-481, § 202(c), 94 Stat. 2321, 2325). As evidenced by the recent influx of habeas petitions in this Court, "[h]abeas petitions play an important role in challenging – and deterring – unlawful detention." *Id.* As here, Petitioner could not afford counsel to challenge his detention, and he is represented *pro bono*. The availability of EAJA fees supports the provision of *pro bono* services and enables legal services organizations to expand those services. *Id.* For all of the reasons cited by the Tenth Circuit in *Daley*, "[i]nterpreting the EAJA to allow fees in immigration habeas actions therefore furthers its statutory purpose." *Id.* at 1164.

In opposing an award of EAJA fees here, the government urges the Court to follow *Obando-Segura v. Garland*, 999 F.3d 190 (4th Cir. 2021) and *Barco v. Witte*, 65 F.4th 782 (5th Cir. 2023) and find that immigration habeas proceedings are "hybrid" and not civil for the purposes of EAJA. ECF No. 10 at 3-5. *Obando-Segura* and *Barco* do not support the government's position. *Obando-Segura* relied on two cases from the Supreme Court, *Harris v. Nelson*, 394 U.S. 286, 293-94 (1969) and *Schlanger v. Seamans*, 401 U.S. 487, 490 (1971), both of which are distinguishable. *Harris* addressed whether the Federal Rules of Civil Procedure governed and authorized discovery in habeas actions; the Court "focused on how habeas *practice* differed from general civil *practice.*" *Daley*, 158 F.4th at 1161 (discussing *Harris*). "But practice and procedure offer little insight into whether an action is civil in *nature* in the sense that it is geared to redress private wrongs." *Id. Schlanger* considered the term "civil action" in an unrelated statute, not under EAJA. 401 U.S. at 490, n. 4. "More fundamentally, there is still an overwhelming judicial consensus that habeas actions are civil actions even when considering *Harris* and *Schlanger.*" *Daley,* 158 F.4th at 1161. In *Obando-Segura*, the Fourth Circuit also relied on its own decision in *O'Brien v. Moore*, 395 F.3d 499 (4th Cir. 2005). *O'Brien* is

distinguishable, however, because it addressed criminal imprisonment rather than – as at issue here – civil immigration detention. Like *O'Brien*, the Fifth Circuit's decision in *Barco* is also distinguishable on the same basis in that the habeas petition at issue challenged criminal imprisonment, not civil detention. 65 F.4th at 785 & n. 1. *See Michelin*, 2026 WL 263483 at *5-7 (addressing and rejecting the government's theory that habeas petition are "hybrid" and describing the argument as a "dead end").

In light of the clear grounds supporting the conclusion that immigration habeas actions are civil actions within the meaning of EAJA, and the overwhelming support for this conclusion in courts around the country, the Court should reject Respondents' argument that there is any "ambiguity" that justifies strictly construing the waiver of sovereign immunity in the government's favor. ECF No. 10 at 5. *See, e.g., Michelin*, 2026 WL 263483, at *10; *Daley*, 158 F.4th 1152; *Temahagari v. Bondi, et al.,* 2026 WL 353264 (W.D. Wash. 2026) (citing *Michelin* and *Daley*); *Maldonado Torres v. Bondi*, No. 0:26-CV-1061, 2026 WL 359901, at *1 (D. Minn. Feb. 9, 2026) ("[a] petitioner seeking release from immigration detention shall be awarded costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), unless the Court finds that the government's position was substantially justified or that special circumstances make an award unjust"); *Martinez Gamez v. Easterwood, et al.*, 2026 WL 295400 at *5 n. 1 (D. Neb. Feb. 4, 2026) (same); *Michelin v. Oddo,* No. 3:23-CV-22, 2024 WL 3937228, *9 (W.D. Pa. Aug. 26, 2024); *Daley v. Choate,* No. 22-CV-03043-RM, 2024 WL 989397, at *2 (D. Colo. Mar. 7, 2024); *Vacchio v. Ashcroft*, 404 F.3d 663, 668 (2d Cir. 2005); *Ortega v. Hodgson,* No. CIV.A. 11-10358-MBB, 2012 WL 1658931, n.2, *3 (D. Mass. May 10, 2012); *Geegbae,* 011 WL 841237, *1; *In re Petition of Hill,* 775 F.2d 1037, 1040-41 (9th Cir. 1985); *Oscar,* 595 F. Supp. 2d at 168.

7

### 3. The government's position in opposing the Petition was not substantially justified.

To preclude an award of fees under EAJA, the government bears the burden of proving that its position was "substantially justified." *See Saysana v. Gillen*, 614 F.3d 1, 5 (1st Cir. 2010); *Tang*, 689 F. Supp.2d at 214. In evaluating that question, the Court "must examine the actual merits of the government's litigation position as to both the facts and the law" and assess that position largely as a whole. *See Saysana*, 614 F.3d at 5 ("EAJA – like other fee shifting statutes – favors treating a case as an inclusive whole, rather than as atomized line items. In other words, in evaluating the Government's position, we must 'arrive at one conclusion that simultaneously encompasses and accommodates the entire civil action") (internal citations omitted); *Michel v. Mayorkas*, 68 F.4th 74, 79 (1st Cir. 2023) ("We evaluate the government's pre-litigation and litigation position holistically").

Here, the government did not lose a close case. It conceded that the Court would reach the same outcome here if it followed its reasoning in a recent decision that raised the same issues. ECF No. 8. In the decision cited by Respondents, the Court held unequivocally that an individual in Petitioner's circumstances, detained in the interior of the United States pursuant to 8 U.S.C. § 1226(a) is entitled to a bond hearing. *See Morales v. Plymouth County Correctional Facility,* No. 25-12602-AMB, ECF No. 15 (D. Mass. Sept. 30, 2025). There, the Court stated:

> As Respondents acknowledge in their opposition [], "[o]ther sessions of this court, as well as other courts across the country, have determined that 8 U.S.C. § 1226(a), and not 8 U.S.C. § 1225(b)(2), appl[ies] to aliens arrested and detained within the United States, even if such alien meets the definition of an applicant for admission as an alien present in the United States who has not been admitted."

> The Court agrees with these courts that the detention of noncitizens such as Petitioner, who are arrested and detained within the United States, is governed by 8 U.S.C. § 1226(a) and that Petitioner is thus entitled to a bond hearing. Specifically, 8 U.S.C. § 1225(b)(2), which provides for mandatory detention

8

(subject to exclusions not applicable here), by its own terms applies only to "applicant[s] for admission" who an "examining immigration officer" has determined are "not clearly and beyond a doubt entitled to be admitted," 8. U.S.C. § 1225(b)(2)(A), and thus "authorizes the Government to detain certain aliens seeking admission into the country," *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). 8 U.S.C. § 1226, by contrast, which creates a discretionary detention framework (again subject to exclusions not applicable here), applies to noncitizens arrested "[o]n a warrant," 8. U.S.C. § 1226(a), and authorizes the government "to detain certain aliens already in the country," *Jennings*, 583 U.S. at 289; *see also id.* at 288 (noting that § 1226 applies also to "aliens who were inadmissible at the time of entry"). Noncitizens subject to 8 U.S.C. § 1226's discretionary detention framework are entitled to a bond hearing before an immigration judge. *Id.* at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021). Because Petitioner was already in the country when ICE arrested him on a warrant [], he is subject to 8 U.S.C. § 1226's discretionary detention framework and entitled to a bond hearing. He has not received such a hearing, so his detention is unlawful.

This case is no different than *Morales* and the large quantity of other decisions from this Court granting petitions by individuals detained by ICE in the interior pursuant to 8 U.S.C. § 1226(a) who have been deprived of a bond hearing. The government's argument here, which attempts to justify Petitioner's detention as mandatory pursuant to *Matter of Yajure Hurtado*, is to no avail. Mr. Ndongala was detained by ICE in Maine. Upon entry to the United States, he was served with a release on recognizance that expressly stated that ICE was releasing him pursuant to 8 U.S.C. § 1226. In response to the Petition, the government made no effort to distinguish Petitioner's case from the Court's prior decisions in which it granted habeas relief. The government also made no effort to distinguish Petitioner's case from the substantially numerous decisions from other judges within the District also finding that an individual arrested by ICE in the interior of the United States is detained pursuant to 8 U.S.C. § 1226 and entitled to a bond hearing.

Indeed, and crucially, in *Guerrero Orellana v. Moniz*, No. 25-cv-12664-PBS, ECF No. 112 (D. Mass. Dec. 19, 2025), Judge Saris certified a class of individuals (*see* class definition at

25-26), which includes Petitioner, and issued a declaratory judgment that:

> members of the certified class are not subject to detention under 8 U.S.C. § 1225(b)(2). Defendants' policy of subjecting members of the certified class to detention under 8 U.S.C. § 1225(b)(2) without consideration for bond and a custody redetermination (i.e., bond) hearing is unlawful and violates the Immigration and Nationality Act and its regulations. The members of the certified class are subject to detention under 8 U.S.C. § 1226(a), including access to consideration for release on bond and/or conditions before immigration officers and Immigration Judges. After joining the class, the member of the certified class shall remain subject to this order notwithstanding any subsequent change in their location, facility of detention, or venue of immigration proceeding.

*Id.* at 26-27. Despite entry of this expressly clear declaratory judgment, the government is "systematically" refusing "to honor and follow" the Court's declaration. *Guerrero Orellana v. Moniz*, ECF No. 158 at 1 (Memorandum in Support of Petitioner-Plaintiff's Motion for Partial Summary Judgment and Class Certification and in Opposition to Respondents-Defendants' Motion to Dismiss) (D. Mass. Jan. 27, 2026). As Petitioner noted in *Guerrero Orellana*, "[t]here is no dispute that the Department of Justice has instructed the Immigration Judges to disregard this Court's declaration and deny bond hearings pursuant to [*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (B.I.A. 2025)]." *Id.* and ECF No. 134-1.

Under these circumstances, the government's litigating position here in forcing Petitioner to retain counsel to file a Petition to obtain a bond hearing is entirely unjustified and fees should be awarded. *See, e.g., Oscar*, 595 F. Supp. at 170 (granting fees for prevailing habeas corpus petitioner who was detained on an unreasonable reading of 8 U.S.C. § 1226(c)'s mandatory detention provision); *Geegbae*, 2011 WL 841237 at *2 (granting fees for prevailing habeas corpus petitioner whose detention was prolonged, whose removal was not reasonably foreseeable, and where the government failed to address recent case law concerning the constitutional concerns at issue). Try as it might, the government can offer no rationale to justify holding Petitioner – an individual arrested by ICE discretionarily with a pending asylum

application and no criminal history – without a bond hearing in light of the body of law that has developed in this District.

As such, the government's litigating position does not meet basic standards of reasonableness. *Tang*, 689 F. Supp. at 214-215 ("While the substantial justification standard necessarily dilutes the court's review of the agency's action for the purposes of a fee award, that review cannot be conducted in a vacuum. It has to be placed in the context of the EAJA's remedial purposes" and "[i]f the EAJA it to mean anything in immigration cases, it must apply to the case at bar"). Respondents simply argue that Petitioner was detained under 8 U.S.C. § 1225(b)(2) "because Petitioner was never *lawfully* admitted into the United States . . . ." ECF No. 10 at 6 (italics in original). They then state, incorrectly, that when Petitioner "was initially encountered by immigration authorities, he was detained under 8 U.S.C. § 1225(b)(2)." *Id.* In fact, as someone who was released on recognizance from the border under 8 U.S.C. § 1226(a) and re-detained in the interior, Petitioner was only ever detained under 8 U.S.C. § 1226(a). Regardless, Respondents' assertion that individuals detained in the interior of the United States are subject to mandatory detention because they were not "lawfully admitted into the United States" and are thus applicants for admission pursuant to 8 U.S.C. § 1225(b) has been resoundingly rejected in this District and in courts throughout the United States. That there have been several outlier decisions does not make the Respondents' litigation position substantially justified.[2] Nor does their continuing belief that the argument is correct at least to the extent that it serves Respondents' current hardline immigration policy.

Respondents have not satisfied their burden of showing that they had a reasonable factual

---

[2] Judge Gorton's decision in *Pena v. Hyde* is distinguishable. ECF No. 10 at 9. That the declaratory judgment in *Guerrero Orellana v. Moniz* is on appeal does not make it unenforceable. ECF No. 10 at 9, n. 4. Finally, the Fifth Circuit's decision in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026) does not control, and it did not consider whether bond hearings should be granted under due process.

or legal basis to support detaining Petitioner without a bond hearing. *See U.S. v. Cacho-Bonilla*, 206 F. Supp.2d 204, 207-09 (D. P.R. 2002) (awarding fees because it was the government's burden to show "(1) that it had a reasonable basis for the facts alleged, (2) that it had a reasonable basis in law for the theories advanced, and (3) that the facts supported its theory" and it could not do so).

### B. Mr. Ndongala's Requested Fees And Costs Are Reasonable

In conformance with 28 U.S.C. § 2412(d), Petitioner submits with this application the declaration of his attorney Daniela Hargus and her appended time and expense records to demonstrate the actual time expended and cost incurred in prosecuting his Petition. The declaration, submitted herewith as Exhibit 2 ("Hargus Decl."), documents in detail that the requested fees and costs are appropriate in light of the work that Attorney Hargus was required to expend on the case.

The proposed fee award covers 6.2 hours of time in prosecuting the petition, which included the following tasks: investigating, drafting and filing the Petition and accompanying attorney affidavit with exhibits (Hargus Decl. at para. 5); reviewing the government's response and communicating with Petitioner (Hargus Decl. at para. 6-7); and preparing this fee application. Hargus Decl. at para. 9.

Petitioner proposes an adjusted hourly rate of $267.46 for a total fee award of $1658.25 plus $5 in costs. Although EAJA, enacted in March 1996, sets a default statutory cap of $125 per hour, that rate may be increased to account for the cost of living. 28 U.S.C. § 2412(d)(2)(A)(ii); *Castaneda-Castillo v. Holder*, 723 F.3d 48, 76 (1st Cir. 2013). Petitioner requests that the Court calculate the hourly rate by multiplying the EAJA's $125 per hour cap by a fraction with a denominator of 162.8 (representing the Annual Consumer Price Index for all Urban Consumers

in the Boston-Cambridge-Newton, MA-NH Area for March of 1996) and with a numerator of

348.343 (representing the same Index for January 2026).[3] The resulting rate, to the nearest

penny, is $ 267.46, an amount that reflects the upward adjustment of the $125 cap based on the

cost of living in the metropolitan region where Petitioner's attorneys are located. 28 U.S.C. §

2412(d)(2)(A). In sum, Petitioner claims 6.2 hours of attorney fees and these hours multiplied by

the above rate provides for a total amount of $1658.25. Billed at this rate, Petitioner's requested

fee is reasonable. *See, e.g., Oscar*, 595 F. Sup.2d at 171 (EAJA fees awarded in a habeas action

for 123.4 total hours at hourly rate adjusted for Boston-area cost of living).

**III.    CONCLUSION**

For all of the foregoing reasons, Petitioner Manuel Ndongala requests that the Court grant

his application for an EAJA fee award because he is the prevailing party, the government cannot

substantially justify its position throughout this litigation, there are no special circumstances that

would make the award unjust, and the requested award of $1658.25 is reasonable.

Respectfully submitted

MANUEL NDONGALA

By his attorney,

/s/ *Daniela Hargus*
Daniela Hargus, BBO# 711041
Detention Program Manager
Political Asylum/Immigration Representation

---

[3] Petitioner requests that the Court take judicial notice of the Annual Consumer Price Indices for all Urban Consumers published by the Bureau of Labor Statistics as "a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). A true and correct copy of the Indices, as published by the Bureau of Labor Statistics, is attached hereto as Exhibit 3.

(PAIR) Project
98 N. Washington Street, Suite 106
Boston, MA 02114
(978) 502--7448
dhargus@pairproject.org

*Pro bono* counsel for Petitioner

Dated: February 17, 2026

**<u>Certificate of Service</u>**

I, Daniela Hargus, certify that on this 17th day of February 2026, I caused a copy of the foregoing Motion to be served on Respondents' counsel via the CM/ECF platform.

<u>*/s/ Daniela Hargus*</u>
Daniela Hargus