UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MANUEL NDONGALA, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | |
| DAVID T. WESLING, Acting Boston Field | * | |
| Office Director, U.S. Immigration and | * | |
| Customs Enforcement, ANTONE MONIZ, | * | Civil Action No. 26-cv-10194-ADB |
| Superintendent of Plymouth County | * | |
| Correctional Facility, TODD LYONS, | * | |
| Acting Director, U.S. Immigration and | * | |
| Customs Enforcement, and KRISTI NOEM, | * | |
| U.S. Secretary of Homeland Security, | * | |
| | * | |
| Respondents. | * | |
| | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

On January 27, 2026, the Court granted Petitioner's petition for writ of habeas corpus and ordered Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a). [ECF No. 9]. An immigration judge subsequently granted Petitioner release on bond. [ECF No. 11]. Petitioner now moves for an award of $1,658.25 in attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. [ECF No. 12]. Respondents oppose an award under the EAJA. [ECF Nos. 10, 13]. For the following reasons, although the Court is inclined to grant Petitioner's motion, the motion is held in abeyance until the judgment in this case becomes final under the EAJA.

The EAJA "entitles a prevailing party in certain civil actions against the United States to receive attorney's fees, unless the government's position was substantially justified or special circumstances make an award unjust." Michel v. Mayorkas, 68 F.4th 74, 76 (1st Cir. 2023) (citing 28 U.S.C.§ 2412(d)(1)). Its purpose is "to ensure that certain individuals . . . will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved." Id. (quoting Aronov v. Napolitano, 562 F.3d 84, 88 (1st Cir. 2009) (en banc)). Under the EAJA, applications for fees and other costs must be submitted "within thirty days of final judgment in the action," 28 U.S.C. § 2412(d)(1)(B), and, in this context, "'final judgment' means a judgment that is final and not appealable," id. § 2412(d)(2)(G). A judgment becomes final and not appealable either when the appeal period has passed without an appeal or when any properly filed appeal has been resolved. Adams v. S.E.C., 287 F.3d 183, 191 (D.C. Cir. 2002) ("[T]he time for appeal must lapse, or the appeal be completed, before the 30-day deadline begins to run."). Thus, the earliest a judgment may become final for EAJA purposes is 60 days after it is entered in a separate document in accordance with Rule 58 of the Federal Rules of Civil Procedure, assuming no appeal is filed. Shalala v. Schaefer, 509 U.S. 292, 302 (1993); see also Fed. R. App. P. 4(a)(1)(B) (setting forth 60-day appeal period for cases involving the federal government).

Here, the government does not contest that Petitioner is a prevailing party within the meaning of the EAJA. [ECF Nos. 10, 13]; see also Castañeda-Castillo v. Holder, 723 F.3d 48, 57 (1st Cir. 2013) (discussing prevailing-party requirement); Oscar v. Gillen, 595 F. Supp. 2d 166, 169 (D. Mass. 2009) (holding that noncitizen, whose habeas petition challenging his confinement without a bond hearing was granted, was a prevailing party within the meaning of the EAJA). Instead, it argues that (1) habeas petitions do not qualify as "civil action[s]" under

the EAJA, (2) its position in the underlying action was substantially justified, and (3) Petitioner's requested fees are unreasonable.  [ECF Nos. 10, 13].

First, habeas petitions are civil actions within the meaning of the EAJA.  The EAJA applies to "any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action."  28 U.S.C. § 2412(d)(1)(A).  The statute does not define the term "any civil action," see id., and the First Circuit has not squarely decided whether it encompasses habeas actions, see Bernardo-Rodrigues v. Hyde, No. 25-cv-00553, 2026 WL 370863, at *2 & n.1 (D. Me. Feb. 10, 2026), appeal docketed, No. 26-1375 (1st Cir. Apr. 9, 2026).  When Congress passed the EAJA in 1980, however, it was well settled that habeas proceedings were civil actions.  See, e.g., Browder v. Dir., Dep't of Corr., 434 U.S. 257, 269 (1978) ("It is well settled that habeas corpus is a civil proceeding."); Mercado v. United States, 183 F.2d 486, 487 (1st Cir. 1950) ("[H]abeas corpus . . . has always been regarded as a civil proceeding.").  Since then, the First Circuit appears to have assumed that immigration habeas proceedings fall within the scope of the EAJA, see Saysana v. Gillen, 614 F.3d 1, 2 (1st Cir. 2010) (denying petition for fees under the EAJA in immigration habeas case on other grounds without questioning applicability of EAJA), in line with the majority of circuits to have considered the issue, see Michelin v. Warden Moshannon Valley Corr. Ctr., 169 F.4th 418, 431–32 (3d Cir. 2026) (surveying circuit split), and district courts in this Circuit have awarded fees under the EAJA in such cases or at least assumed that they qualify as civil actions for purposes of the EAJA, Bernardo-Rodrigues, 2026 WL 370863, at *4; Ortega v. Hodgson, No. 11-cv-10358, 2012 WL 1658931, at *3 n.2 (D. Mass. May 10, 2012); Geegbae v. McDonald, No. 10-cv-10852, 2011 WL 841237, at *2 (D. Mass. Mar. 8, 2011); Oscar, 595 F. Supp. 2d at 171.  Accordingly, this Court is

satisfied that immigration habeas cases are "civil action[s]" within the meaning of 28 U.S.C. § 2412(d)(1)(A).

Second, the government's position was not substantially justified. "[T]he government is 'substantially justified' if 'it has a reasonable basis in law and fact' for its position . . . or put another way, if 'a reasonable person could think [the government's position] correct.'" Michel, 68 F.4th at 78 (first quoting Aronov, 562 F.3d at 94; and then quoting Dantran, Inc. v. U.S. Dep't of Lab., 246 F.3d 36, 41 (1st Cir. 2001)). The fact that the government failed on the merits does not mean that its position was not substantially justified. Id.; see also Tang v. Chertoff, 689 F. Supp. 2d 206, 214–15 (D. Mass. 2010) ("The government has to have been very, very wrong, or so wrong that a 'reasonable person' would agree that its actions were not justified."). On the other hand, "the government's case need not be frivolous to support an award of fees." Dantran, 246 F.3d at 41. Courts generally do not award fees if the issue "is novel and has little to no precedent." Michel, 68 F.4th at 79. Similarly, "[w]hether one court agreed or disagreed with the government does not establish that the government's position was not substantially justified, but a string of court decisions going either way can be indicative." Schock v. United States, 254 F.3d 1, 6 (1st Cir. 2001). The government bears the burden of showing, by a preponderance of the evidence, that its position was substantially justified. Saysana, 614 F.3d at 5.

Here, the government has not carried that burden. As this Court indicated when it first addressed the issue in Morales v. Plymouth County Correctional Facility, No. 25-cv-12602, ECF No. 15 (D. Mass. Sept. 30, 2025), and again in Duarte Rocha v. Hyde, No. 25-cv-12584, 2025 WL 2807692 (D. Mass. Oct. 2, 2025)—and as many other courts in this District and beyond have explained in greater detail, see, e.g., Gomes v. Hyde, 804 F. Supp. 3d 265, 273–77 (D. Mass. 2025); Guerrero Orellana v. Moniz, 802 F. Supp. 3d 297, 306–12 (D. Mass. 2025), appeal

4

docketed, No. 25-2152 (1st Cir. Dec. 3, 2025); Guerrero Orellana v. Moniz, 813 F. Supp. 3d 185, 193–96 (D. Mass. 2025), appeal docketed, No. 26-1094 (1st Cir. Jan. 26, 2026);[1] Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060–62 (7th Cir. 2025)—the plain text of 8 U.S.C. §§ 1225 and 1226; the statute's structure, as recognized by the Supreme Court in Jennings v. Rodriguez, 138 S. Ct. 830, 838 (2018); and long-standing agency practice clearly confirm that noncitizens such as Petitioner who are apprehended within the United States are subject to discretionary detention under 8 U.S.C. § 1226(a), not mandatory detention under § 1225(b)(2)(A).

In light of the flood of decisions in this District and beyond that had repeatedly rejected it by the time the government took the position in this action, see Duarte Rocha, 2025 WL 2807692, at *1 n.2 (collecting in-district decisions); Barco Mercado v. Francis, 811 F. Supp. 3d

---

[1] The government argues that the Court should stay its ruling on Petitioner's EAJA motion until the First Circuit has resolved the pending appeals in Guerrero Orellana. [ECF No. 10 at 9 n.4]; [ECF No. 13 at 2 n.1]. But under the EAJA this Court assesses "the strength of the government's argument[s] that extant law permits a result in its favor, not . . . the strength . . . of its argument[s] that the law should be changed." Spencer v. N.L.R.B., 712 F.2d 539, 559 (D.C. Cir. 1983); see also United States v. One Parcel of Real Prop. with Bldgs., Appurtenances, & Improvements, Known as Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I., 960 F.2d 200, 211 (1st Cir. 1992) (focusing on the government's justification "at the time the government acted"); cf. Schock, 254 F.3d at 5 ("A position which is substantially justified at the initiation may not be justified later in the agency's continuation of the litigation."). If anything, the existence of a judgment that applies to Petitioner (which is seemingly conceded by the government, [ECF No. 8 at 1 n.2]), that establishes that Petitioner is not subject to mandatory detention, only strengthens Petitioner's case for fees under the EAJA. See Canel Ajbal v. Wesling, No. 26-cv-10190, slip op. at 8 (D. Mass. Mar. 27, 2026) (holding that government's position was substantially unjustified because it "w[as] not free to disregard [Guerrero Orellana's] declaration of law or pretend it had no bearing on [the petitioner's] eligibility for bond"); Garcia v. Wamsley, No. 25-cv-01980, 2026 WL 776151, at *6 (W.D. Wash. March 19, 2026) (finding the government's position not substantially justified because it "chose[] to ignore" a judgment declaring that "a certified class of detainees that included Petitioners . . . were not subject to mandatory detention," where the government had appealed the declaratory judgment but "never sought to stay it").

487, 494 (S.D.N.Y. 2025) (noting that, as of November 2025, challengers to the government's interpretation of 8 U.S.C. § 1225 had "prevailed, either on a preliminary or final basis, in 350 of [362] cases decided by over 160 different judges sitting in about fifty different courts spread across the United States"), a reasonable person could not think that the government's contrary position, which it first adopted in early 2025, was correct. See Geegbae, 2011 WL 841237, at *2 (finding government's litigation position not substantially justified in part because "the government did not address any of this district's recent decisions"); Daley v. Choate, No. 22-cv-03043, 2024 WL 989397, at *3 (D. Colo. March 7, 2024) ("[T]he clear legal trend within this District should have made Respondents aware—even in the absence of binding Supreme Court or Tenth Circuit precedent—that their position was not substantially justified."). In fact, in this very case—as in many other cases before this Court—the government filed an abbreviated one-page response to the petition, incorporating the arguments it made in Morales but acknowledging that this Court had rejected those very arguments. [ECF No. 8]. To continue to press arguments that every single judge in this District to consider the issue had already rejected, often repeatedly, does not strike the Court as reasonable under the circumstances,[2] nor has it since become reasonable simply because the government can point to a few isolated out-of-circuit or administrative decisions—some postdating its merits briefing in this case—that come out the

---

[2] The government points to a single in-district decision that it claims favors its position. See [ECF No. 10 at 9 (citing Pena v. Hyde, No. 25-cv-11983, 2025 WL 2108913, at *1 (D. Mass. July 28, 2025) (Gorton, J.)]. But Pena, which rejected a noncitizen's argument that an approved I-130 petition entitled him to remain in the United States, did not address the interplay between 8 U.S.C. §§ 1225 and 1226, 2025 WL 2108913, at *1–2, and the judge that authored that decision later clarified that § 1226, not § 1225, governs the detention of noncitizens apprehended within the United States, Zamora v. Noem, No. 25-cv-12750, 2025 WL 2958879, at *1–2 (D. Mass. Oct. 17, 2025) (Gorton, J.).

other way.[3]  Schock, 254 F.3d at 6; see also Oscar, 595 F. Supp. 2d at 170 ("[O]ne administrative

decision, whether favorable or unfavorable, is not dispositive of whether the government's

position was substantially justified.").  In sum, although the Court stops short of finding that the

government's position was frivolous, it concludes that the government lacked a reasonable basis

in law and fact when it opposed the petition.[4]

Third, Petitioner's requested fees are reasonable.  Based on the declaration submitted

with the motion, [ECF No. 12-3], counsel for Petitioner spent 6.2 hours in prosecuting the

---

[3] To date, the Second, Sixth, and Eleventh Circuits have held that noncitizens in Petitioner's position are subject to discretionary detention, while the Fifth and Eighth Circuits have held that they are subject to mandatory detention.  Compare Barbosa da Cunha v. Freden, No. 25-3141, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026), and Lopez-Campos v. Raycraft, No. 25-1965, 2026 WL 1283891, at *3 (6th Cir. May 11, 2026), and Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, No. 25-14065, 2026 WL 1243395, at *1 (11th Cir. May 6, 2026), with Buenrostro-Mendez v. Bondi, 166 F.4th 494, 502–08 (5th Cir. 2026), and Avila v. Bondi, 170 F.4th 1128, 1138 (8th Cir. 2026); see also Castañon-Nava, 161 F.4th at 1060–62 (7th Cir. 2025) (concluding, at preliminary-injunction stage, that government was not likely to succeed on the merits of its argument that such individuals were subject to mandatory detention); Castañon-Nava v. U.S. Dep't of Homeland Sec., No. 25-3050, 2026 WL 1223250, at *20 (7th Cir. May 5, 2026) (opinion of Lee, J.) (reaching the same conclusion after full briefing and oral argument).
[4] Many other courts have awarded fees under the EAJA in cases such as this one.  Peruano v. Wesling, No. 26-cv-10300, 2026 WL 1413758, at *13 (D. Mass. May 20, 2026); Canel Ajbal v. Wesling, slip op. at 10; Bernardo-Rodrigues, 2026 WL 370863, at *4; Barco Mercado, 811 F. Supp. 3d at 506; Yao v. Almodovar, 813 F. Supp. 3d 461, 478 (S.D.N.Y. 2025); Eshdavlatov v. Arnott, 817 F. Supp. 3d 779, 788–89 (W.D. Mo. 2025); Mairena-Munguia v. Arnott, 810 F. Supp. 3d 1030, 1037 (W.D. Mo. 2025); Diaz-Cruz v. Dedos, No. 25-cv-01117, 2025 WL 3628517, at *2–3 (D.N.M. Dec. 12, 2025).  But see Aguilar-Linares v. Lyons, No. 26-cv-01122, 2026 WL 1031860, at *5 (D.P.R. Apr. 16, 2026) (declining to conclude that government's position was not substantially justified because of the lack of "settled First Circuit precedent on the issues" and because "at least one court within [D.P.R.] ha[d] adopted the [g]overnment's interpretation of Section 1225"); Lopez v. Trump, 816 F. Supp. 3d 492, 495 (D. Vt. 2026) (holding that government's position was substantially justified because, although it was incorrect, "other courts have differed, and there is no authoritative appellate guidance on the issue"); Garcia-Lopez v. Castro, No. 25-cv-01144, 2026 WL 524082, at *36 (D.N.M. Feb. 25, 2026) (holding that government's position was substantially justified because "[c]ourts across the country currently face this issue and have reached contradicting results").

petition, for which she asks to be compensated at an adjusted hourly rate of $267.46, for a total fee award of $1,658.25. [ECF 12 at 12–13].[5]

The government objects to Petitioner's claimed fees on three grounds, arguing that (1) the hourly rate should be capped at $125, which is the statutory maximum "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee," 28 U.S.C. § 2412(d)(2)(A); (2) Petitioner's counsel should not recover fees for three items in the chart of time records because "a redacted version of the [underlying] emails with time stamps . . . would be the best evidence of the time actually and contemporaneously spent in this matter"; and (3) the 1.5 hours Petitioner's counsel spent on preparing and filing the habeas petition and the 2 hours spent preparing the EAJA motion are excessive because the organization for which Petitioner's counsel works has filed very similar pleadings in other cases before this Court. [ECF No. 13 at 2–5].

The government's objections are not well taken.  Courts routinely adjust hourly rates to account for the cost of living in the manner that Petitioner proposes, consistent with what the statute itself envisages.  See, e.g., Tang, 689 F. Supp. 2d at 218 (noting that courts generally "multiply[] the $125 statutory rate by the [Boston area] annual average consumer price index figure for all urban consumers . . . for the years in which counsel's work was performed, and then dividing by the [Boston area] . . . figure for March 1996, the effective date of the EAJA's $125 statutory rate" (quoting Shalan v. Chertoff, No. 05-10980, 2006 WL 3307512, at *5 (D.

---

[5] Petitioner's motion also appears to request five dollars in costs but does not substantiate this amount or include it in the total amount of fees sought, so the Court will disregard it.  [ECF No. 12 at 12–13].

Mass. Nov. 14, 2006))); accord 28 U.S.C. § 2412(d)(2)(A) (permitting courts to consider "an increase in the cost of living").  Petitioner's counsel's time records, which indicate the tasks she performed, the date on which each task was performed, and the amount of time spent on each task, plainly satisfy the EAJA's requirement for an "itemized statement . . . stating the actual time expended," 28 U.S.C. § 2512(d)(1)(B).  Castaneda-Castillo, 723 F.3d at 79 ("Records that include the different tasks each attorney performed, the total number of hours billed, the billing rate for those hours, the date on which each task[] was performed, and the amount of time spent on each task generally fulfill this requirement.").  Finally, the Court does not find that any factual or legal overlap between this case and others litigated by Petitioner's counsel's organization justifies reducing the fees requested for the extremely modest amount of time that Petitioner's counsel spent preparing the petition and EAJA motion in this case.

Accordingly, at least under the law as it stands today, Petitioner will seemingly be entitled to an award of $1,658.25 in attorney's fees under the EAJA.

That said, no separate judgment has been entered in this case in accordance with Rule 58(a), and there is therefore no final judgment for purposes of the EAJA, making any award of fees premature.  The Court will therefore hold Petitioner's motion in abeyance until a judgment is entered in this case and becomes final for purposes of the EAJA.

To be clear, "a party need not wait until the judgment is final to move for attorney's fees." Lizardi v. Wilkinson, 986 F.3d 1294, 1295 (9th Cir. 2021); see also Melkonyan v. Sullivan, 501 U.S. 89, 103 (1991) (declining to resolve issue of whether the EAJA permits plaintiffs to "apply for fees at any time up to 30 days after entry of judgment, and even before judgment is entered, as long as [they have] achieved prevailing party status"); Bly v. Shulkin, 883 F.3d 1374, 1377 n.1 (Fed. Cir. 2018) ("[C]ourts generally treat as timely EAJA applications filed even before a

judgment becomes final."). Moreover, the government has not contested the timeliness of Petitioner's motion in this case, see [ECF No. 10]; [ECF No. 13], and the fact that Petitioner submitted his motion before the formal entry of judgment does not deprive this Court of jurisdiction to address it, Dvorkin v. Gonzales, 173 F. App'x 420, 423 n.4 (6th Cir. 2006) (declining to address government's contention that award was premature but rejecting argument that district court lacked jurisdiction to address EAJA motion filed before judgment became final under the EAJA). Despite no objection from the government to the timeliness of Petitioner's EAJA motion, however, in the interests of clarity and fairness, and to permit the government to appeal the Court's grant of Petitioner's petition, should it wish to do so,[6] the Court directs the clerk to enter judgment in favor of Petitioner in accordance with Rule 58(a). If the government does not file an appeal within 60 days of the entry of judgment, the Court will grant Petitioner's EAJA motion for the reasons set forth in this order, assuming no intervening changes in the law. If the government timely appeals, the Court will continue to hold Petitioner's motion for fees in abeyance, pending resolution of the appeal and any subsequent proceedings.

---

[6] The Court notes that, had the government wished to appeal the Court's grant of Petitioner's petition, it could have filed a notice of appeal, see Fed. R. App. P. 4(a)(2) (permitting notice of appeal to be filed "after the court announces a decision or order . . . but before the entry of the judgment or order"); Galvin v. U.S. Bank, N.A., 852 F.3d 146, 155 n.7 (1st Cir. 2017) (noting that parties can waive requirement that judgment be set out in separate document), or requested entry of judgment, Fed. R. Civ. P. 58(d) (permitting parties to "request that judgment be set out in a separate document as required by Rule 58(a)"). Additionally, even absent further action from this Court, its ruling on Petitioner's petition would have become final for purposes of the EAJA on August 25, 2026. See Fed. R. Civ. P. 58(c)(2) (noting that, for purposes of the Federal Rules, judgment is entered "when . . . the earliest of these events occurs: . . . it is set out in a separate document; or . . . 150 days have run from the entry in the civil docket"). Nevertheless, in the interests of clarity, the Court will direct the clerk to enter separate judgments, in accordance with Rule 58(a), when it grants habeas petitions in the future.

**SO ORDERED.**

June 1, 2026                                                 */s/ Allison D. Burroughs*
                                                            ALLISON D. BURROUGHS
                                                            U.S. DISTRICT JUDGE

11